1

2

3

4

5

6

7

8          IN THE UNITED STATES DISTRICT COURT

9         FOR THE EASTERN DISTRICT OF CALIFORNIA

10   NGUYEN DAOTIEN,

11          Petitioner,              No. CIV S-03-1252 DFL CMK P

12      vs.

13   SISKIYOU COUNTY PROBATION,

14          Respondent.       FINDINGS AND RECOMMENDATIONS

15   _____/

16          Petitioner is a state prisoner proceeding pro se with an application for a writ of

17   habeas corpus pursuant to 28 U.S.C. § 2254.  In his petition, petitioner challenges his July 2000

18   conviction on assault with a deadly weapon and by means of force likely to produce great bodily

19   injury and reckless driving and the sentence of three years probation.

20   I.     Background[1]

21          The crimes arose out of an incident in which petitioner drove through a

22   construction barrier on Highway 97 in Siskiyou County, California.  Mary Bigham was working

23   as a flagger on a construction paving project on Highway 97 on the afternoon of September 22,

24   1999.  Using cones, she had marked off an area for northbound traffic to stop.  She was wearing

25   _____

26          [1]For a more detailed discussion of the facts see the opinion of the California Court of
Appeal for the Third Appellate District in People v. Nguyen Daotien (March 4, 2002), a copy of
which is attached as exhibit B to the Answer.

1  a neon green vest, holding an eighteen by eighteen inch stop sign, and she was wearing a white

2  hard hat.  A number of signs warned motorists of the road construction ahead.

3        Dan Wells and Cal Perkins were pilot car drivers who led the stopped traffic

4  through the construction area.  Wells and Perkins were also wearing the neon vests and hard

5  hats.  Their cars bore signs stating "Pilot Car" and "Follow Me" and each vehicle had flashing

6  amber beacons on the top.  At the time of the incident, Wells was preparing to pilot northbound

7  traffic and Perkins was preparing to pilot southbound traffic.

8        Bigham was standing on the shoulder of the northbound lane, preparing to release

9  her traffic when she saw a cloud of dust kicked up by a red pickup driving up the shoulder of the

10  northbound lane.  There were approximately twelve vehicles waiting to be led through the

11  construction zone in front of Bigham.  Bigham then saw the red pickup truck cut in between two

12  trucks that were about ten vehicles back and cross over into the southbound lane.  She ran into

13  the southbound lane and held up her stop sign.

14        The pickup truck never stopped or slowed.  Instead, it swerved abruptly at

15  Bigham, who jumped backwards into the southbound lane.  Bigham estimated the truck was

16  traveling between twenty-five and thirty miles per hour.  The pickup came within four to six

17  inches of her body, and she felt its side mirror hit her hand.

18        After narrowly missing Bigham, the pickup continued towards Wells, who had

19  been standing near the rear of his pilot car.  The pickup never slowed or stopped.  Wells saw the

20  pickup swerve toward Bigham.  The pickup came so close to her that Wells thought it had run

21  over her foot.  Wells estimated the pickup was going thirty to thirty-five miles per hour.  When

22  the pickup swerved towards him, Wells raised his arms, waved them and yelled as loudly as he

23  could for the driver to stop.  Wells jumped out of the way as the pickup came towards him.

24  Wells's right hand hit the hood of the pickup truck as the pickup drove past him.  As the pickup

25  continued northbound, Wells jumped in his pilot car to go after it.

26  ///

1    The pickup continued driving down the northbound lane.  Perkins, the other pilot

2  car driver saw the pickup coming towards him in the northbound lane.  Perkins was piloting

3  traffic in the southbound lane.  Perkins tried to block the pickup by placing his vehicle in the

4  roadway.  The pickup maneuvered around Perkins's car and continued northbound.  The pickup

5  finally stopped on the paved shoulder of the northbound lane when it encountered southbound

6  traffic.  Perkins and Wells boxed in the pickup truck.

7    Before Perkins could get out of his pilot car, petitioner began maneuvering the

8  pickup, trying to get around the pilot cars.  Perkins walked up to the window of the pickup.  He

9  asked petitioner what he was trying to do. Petitioner did not respond. Perkins asked petitioner if

10  he spoke English.  When petitioner replied that he did, Perkins advised defendant that he was a

11  member of the safety team and was making a citizens arrest.

12    Perkins instructed petitioner to move his truck and wait for a highway patrolman

13  to come.  While waiting, petitioner again attempted to leave; members of the paving crew arrived

14  to help Perkins, boxing in petitioner with their own cars.  Nevertheless, petitioner tried to leave

15  twice more.

16    After forty-five minutes, Deputy Sheriff Christopher Rees arrived.  Rees twice

17  told petitioner to exit his truck.  When petitioner finally exited, he tried to leave.  When

18  petitioner did not comply, Rees grabbed him and handcuffed him.

19    Petitioner told Rees that he was trying to make to Klamath Falls before dark.

20  Petitioner told the highway patrolman who arrived to investigate that he had lived in the United

21  States for twenty years and had driven through construction before.  He said that he had seen the

22  traffic stopped on the highway and had stopped his pickup.  Petitioner stated that he had seen the

23  flagger holding the stop sign and was not sure why he did not stop.  Petitioner denied driving

24  towards the flagger and said that he had tried to drive away from her.  He had no explanation for

25  what he did.

26  ///

3

1   II.     Standards for Granting Habeas Relief

2   _____An application for a writ of habeas corpus by a person in custody under a

3   judgment of a state court can be granted only for violations of the Constitution or laws of the

4   United States. See 28 U.S.C. § 2254(a). Federal habeas corpus relief also is not available for any

5   claim decided on the merits in state court proceedings unless the state court's adjudication of the

6   claim:

7           (1) resulted in a decision that was contrary to, or involved an unreasonable
            application of, clearly established federal law, as determined by the Supreme Court
8           of the United States; or

9           (2) resulted in a decision that was based on an unreasonable determination of the
            facts in light of the evidence presented in the State court proceeding.
10
    See 28 U.S.C. § 2254(d) (referenced herein in as " § 2254(d)" or "AEDPA). See Ramirez v.
11
    Castro, 365 F.3d 755, 773-75 (9th Cir.2004) (Ninth Circuit affirmed lower court's grant of habeas
12
    relief under 28 U.S.C. § 2254 after determining that petitioner was in custody in violation of his
13
    Eighth Amendment rights and that § 2254(d) does not preclude relief); see also Lockyer v.
14
    Andrade, 538 U.S. 63, 70-71 (2003) (Supreme Court found relief precluded under § 2254(d) and
15
    therefore did not address the merits of petitioner's Eighth Amendment claim).  Courts are not
16
    required to address the merits of a particular claim, but may simply deny a habeas application on
17
    the ground that relief is precluded by 28 U.S.C. § 2254(d). See Lockyer, 538 U.S. at 71
18
    (overruling Van Tran v. Lindsey, 212 F.3d 1143, 1154-55 (9th Cir.2000) in which the Ninth
19
    Circuit required district courts to review state court decisions for error before determining
20
    whether relief is precluded by § 2254(d)).  It is the habeas petitioner's burden to show he is not
21
    precluded from obtaining relief by § 2254(d). See Woodford v. Visciotti, 537 U.S. 19, 25 (2002).
22
            The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) are
23
    different.  As the Supreme Court has explained:
24
            A federal habeas court may issue the writ under the "contrary to" clause if the state
25          court applies a rule different from the governing law set forth in our cases, or if it
            decides a case differently than we have done on a set of materially
26          indistinguishable facts. The court may grant relief under the "unreasonable

                                                     4

1   application" clause if the state court correctly identifies the governing legal
    principle from our decisions but unreasonably applies it to the facts of the
2   particular case. The focus of the latter inquiry is on whether the state court's
    application of clearly established federal law is objectively unreasonable, and we
3   stressed in Williams v. Taylor, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389
    (2000)  that an unreasonable application is different from an incorrect one.
4

5   Bell v. Cone, 535 U.S. 685, 694 (2002). A state court does not apply a rule different from the law

6   set forth in Supreme Court cases, or unreasonably apply such law, if the state court simply fails to

7   cite or fails to indicate an awareness of federal law. See Early v. Packer, 537 U.S. 3, 8 (2002).

8            The court will look to the last reasoned state court decision in determining whether

9   the law applied to a particular claim by the state courts was contrary to the law set forth in the

10  cases of the United States Supreme Court or whether an unreasonable application of such law has

11  occurred. See Avila v. Galaza, 297 F.3d 911, 918 (9th Cir.2002), cert. dismissed,538 U.S. 919

12  (2003).  Where the state court fails to give any reasoning whatsoever in support of the denial of a

13  claim arising under Constitutional or federal law, the Ninth Circuit has held that this court must

14  perform an independent review of the record to ascertain whether the state court decision was

15  objectively unreasonable. See Himes v. Thompson, 336 F.3d 848, 853 (9th Cir.2003). In other

16  words, the court assumes the state court applied the correct law, and analyzes whether the

17  decision of the state court was based on an objectively unreasonable application of that law.  It is

18  appropriate to look to lower federal court decisions to determine what law has been "clearly

19  established" by the Supreme Court and the reasonableness of a particular application of that law.

20  See Duhaime v. Ducharme, 200 F.3d 597, 598 (9th Cir.1999).

21  III.    Arguments and Analysis

22           At the onset, the court notes that petitioner has not sought state collateral review of

23  his conviction.  (Answer at 3.)  Petitioner has exhausted his state remedies through the

24  presentation of certain constitutional claims to the California Supreme Court in his petition for

25  direct review.  (Answer, Exs. B and C.)

26  ///

1      A.      <u>Errors in Allowing Testimony (Claims 1, 2 and 3)</u>

2      Petitioner claims that the trial court erred in allowing officer Cureton to offer his

3 expert opinion and in allowing him to testify that hearsay evidence formed the basis of his expert

4 opinion.  Petitioner also contends that the trial court erred in allowing Cal Perkins to offer opinion

5 testimony.

6      In conducting habeas review, a federal court is limited to deciding whether a

7 conviction violated the Constitution, laws, or treaties of the United States." <u>Estelle v. McGuire</u>,

8 502 U.S. 62 (1991) (citing 28 U.S.C. § 2241; <u>Rose v. Hodges</u>, 423 U.S. 19, 21, (1975) (per

9 curiam )).  Because federal habeas relief does not lie for state law errors, a state court's

10 evidentiary ruling is grounds for federal habeas relief only if it renders the state proceedings so

11 fundamentally unfair as to violate due process. <u>See</u>  <u>Drayden v. White</u>, 232 F.3d 704, 710 (9th

12 Cir. 2000), <u>cert</u>. <u>denied</u>, 532 U.S. 984 (2001); <u>Spivey v. Rocha</u>, 194 F.3d 971, 977-78 (9th Cir.

13 1999), <u>cert</u>. <u>denied</u>, 531 U.S. 995 (2000); <u>Jammal v. Van de Kamp</u>, 926 F.2d 918, 919 (9th Cir.

14 1991) ("The issue for us, always, is whether the state proceedings satisfied due  process; the

15 presence or absence of a state law violation is largely beside the point").

16      1.      <u>Expert Testimony of Officer Cureton</u>

17      Petitioner claims that the trial court erred in allowing Officer Cureton to offer his

18 expert opinion that a pickup being driven twenty-five to thirty miles per hour would cause

19 significant bodily injury to Cal Perkins.[2]  "[I]t is not the province of a federal habeas court to

20 reexamine state-court determinations on state-law questions.

21      The last reasoned decision on this claim was the decision of the California Court of

22

23

24

---

25      [2]In his direct appeal, petitioner presented other claims of error regarding Officer
Cureton's expert testimony; however, in the instant habeas petition he argues only that the trial

26 court erred in allowing Officer Cureton to testify about possible bodily injury to Cal Perkins.

1   Appeal for the Third Appellate District on petitioner's direct appeal.[3]   In rejecting petitioner's

2   claim, the Appeal Court stated:

> 3   We agree that such matters are inappropriate for expert testimony.  However, the
>     error was harmless.  We review the improper admission of evidence pursuant to
> 4   the standard established by People v. Watson, (1956) 46 Cal.2d 818, 836.  Under
>     this standard, we will not reverse the judgment unless we conclude it is reasonably
> 5   probable that there would have been a different outcome had the error not
>     occurred.
> 6           That a pickup striking a pedestrian can cause significant bodily injury is
>     universally well known and beyond dispute.  While the jury did not need an expert
> 7   to testify on this matter, it is not reasonably probable it would have concluded
>     otherwise.
> 8           Likewise, if the jury believed the testimony of the three victims that
>     defendant swerved toward them at a rate of 25 miles an hour or more, missing
> 9   them by only inches, and that he deliberately drove his pickup at Perkins causing
>     Perkins to jump on the hood to avoid injury, it is reasonably probable the jury
> 10  would have concluded defendant's driving was reckless.

11  (Answer, Ex. B, People v. Daotien, slip op. at 8 (internal citations omitted.))   The state court

12  concluded that allowing Officer Cureton to offer his expert opinion was a harmless error.  After a

13  careful review of the record, the court finds that allowing the expert testimony did not render the

14  proceedings so fundamentally unfair as to violate due process.  See Drayden, 232 F.3d at 710.  As

15  noted above, it is common knowledge that a pickup striking a person can cause significant injury;

16  other witnesses testified that petitioner drove towards Perkins at speed of twenty-five miles per

17  hour or higher.  Even without Officer Cureton's expert testimony on the issue of bodily injury, the

18  jury could have concluded that petitioner's driving could have caused significant bodily harm and

19  was reckless.

20          The state court's determination of the facts was entirely reasonable, and that its

21  rejection of this claim was neither contrary to nor an unreasonable application of controlling

22  principles of federal law.  The court recommends that this claim be rejected.

23          2.   Hearsay Foundation for Expert Opinion

24          Petitioner argues that Officer Cureton should not have been allowed

25  ─────────────────────

26  [3]The California Supreme Court denied this claim without comment or citation. (Answer,
    Ex. C.)

1  to testify about hearsay matters which he used for the basis of his expert opinion.  The last

2  reasoned decision on this claim was the decision of the California Court of Appeal for the Third

3  Appellate District on petitioner's direct appeal.[4]  In rejecting petitioner's claim, the Appeal Court

4  stated:

5        Material otherwise inadmissible, such as a hearsay statement, is properly
   the basis for an expert's opinion, as long as it is reliable.  In this case, the
6  witnesses providing the hearsay statements testified at trial and were subject to the
   defendant's cross examination.  They proved to be reliable witnesses on the
7  witness stand, and their testimony was consistent with each other an with the
   statements on which Cureton relied.  The trial court did not abuse its discretion in
8  determining the statements on which Cureton's opinion was based were reliable.
   ....
9        "Because an expert's need to consider extrajurisdictional matters, and a
   jury's need for information sufficient to evaluate an expert opinion, may conflict
10  with an accused's interest in avoiding substantive use of unreliable hearsay,
   disputes in this area must generally be left to the trial court's sound judgment.
11  Most often, hearsay problems will be cured by an instruction that matters admitted
   through an expert go only to the basis of his opinion and should not be considered
12  for their truth.
        In the instant case, the trial court operated well within its discretion by
13  allowing Cureton to summarize the victims' statements on which he based his
   opinion.  The rationale for limiting testimony directed to the reasons for forming
14  an opinion is to prevent the jury from hearing incompetent hearsay evidence.
   ....
15  Defendant had the opportunity to cross examine these witnesses to test their
   accuracy and credibility.  Additionally, the court has a limiting instruction that the
16  evidence could not be considered for its truth.

17  (Answer, Ex. B, People v. Daotien, slip op. at 8, 11 (internal citations omitted.)) After a careful

18  review of the record, the court cannot find that the admission of the hearsay statements, as a basis

19  for Officer Cureton's expert opinion, violated petitioner's right to due process. See Drayden, 232

20  F.3d at 710.  The court also finds that the admission of the hearsay statements as a basis for an

21  expert opinion does not offend the holding of Crawford v. Washington, 541 U.S. 36 (2004).

22  Officer Cureton's generalized statement's concerning whether a pickup being driven at a speed of

23  twenty-five miles or higher could cause significant bodily injury, (RT 257, 261-264.) is not the

24  kind of testimonial evidence precluded by Crawford. See Crawford, 541 U.S. at 51 (describing a

25  _____

26        [4]The California Supreme Court denied this claim without comment or citation. (Answer,
   Ex. C.)

8

1 testimonial statement as " '[a] solemn declaration or affirmation made for the purpose of

2 establishing or proving some fact' ").

3                    3.    Lay Opinion of Cal Perkins

4              Petitioner argues that the trial court erred in allowing Cal Perkins to offer a lay

5 opinion of whether petitioner was driving recklessly. The last reasoned decision on this claim was

6 the decision of the California Court of Appeal for the Third Appellate District on petitioner's

7 direct appeal.[5] In rejecting petitioner's claim, the Appeal Court stated:

> As a lay witness, Perkins testified that defendant placed him and all of the other
> people in an unsafe situation.  Evidence Code section 800 provides a lay witness
> may give opinion testimony where it is: "Rationally based on the perception of the
> witness and [¶](b) helpful to a clear understanding of his testimony."
> ....
>              Defendant's interpretation of the facts that he had been driving slowly and
> safely to the front of traffic merely to find out what the problem was.  He claimed
> the construction workers jumped in front of his vehicle.  The implication was that
> they, not he, acted in an unsafe manner.
>              Perkins's testimony was helpful because the mere recitation of facts, i.e.
> defendant's approximate speed, which way he swerved, and how close he came to
> the workers, was insufficient to rebut the implication that all of defendant's actions
> were aimed at avoiding hazards created by the workers.  The testimony was
> helpful for the jury to understand that defendant's actions were not the actions of a
> cautious driver merely trying to avoid harm to reckless road workers who were
> unreasonably putting themselves in the path of danger.

17 (Answer, Ex. B, People v. Daotien, slip op. at 12-13.)  The court has reviewed the "newly

18 discovered evidence," which is a mathematical proof, that petitioner submitted in his traverse.  In

19 the proof, petitioner purports to prove that Perkins's testimony was not true. (Partial Traverse

20 filed on May 03, 2004 at 4.) While petitioner's proof is correct; however, the assumptions upon

21 which his proof are based may not be true.  It is not this court's job to reconsider the credibility of

22 witnesses.  That is a job for the trial court.  It is, instead, the job of this court to determine whether

23 the petitioner's trial was so fundamentally unfair so as to violate his due process rights.  After a

24 careful review of the record, the court finds that the admission of the lay opinion of Cal Perkins

---

25              [5]The California Supreme Court denied this claim without comment or citation. (Answer,
26 Ex. C.)

1 did not render the outcome of petitioner's trial fundamentally unfair, thus violating his due

2 process rights.  The court recommends this claim be rejected.

3

4     B.    <u>Motion for Mistrial</u>

5       Petitioner contends that his constitutional rights were violated when the trial court

6 denied his motion for a mistrial based upon jury taint resulting from a potential juror's comments.

7 The Sixth Amendment guarantees a fair trial by an impartial jury.  <u>Irvin v. Dowd</u>, 366 U.S. 717,

8 722 (1961); <u>Tinsley v. Borg</u>, 895 F.2d 520, 523 (9th Cir.1990).  If even a single juror is "unduly

9 biased or prejudiced" the defendant has been denied his right to an impartial jury.  <u>Id.</u> at 523-24.

10 However, not every incident of juror misconduct or bias requires a new trial. <u>United States v.</u>

11 <u>Klee</u>, 494 F.2d 394, 396 (9th Cir. 1974).  "The test is whether or not the misconduct has

12 prejudiced the defendant to the extent that he has not received a fair trial." <u>Id.</u>  On collateral

13 review, a petitioner must show that the alleged error " 'had substantial and injurious effect or

14 influence in determining the jury's verdict.' "  <u>Jeffries v. Blodgett</u>, 5 F.3d 1180, 1190

15 (9th Cir. 1993) (quoting <u>Brecht v. Abrahamson</u>, 507 U.S. 619, 637 (1993)).

16       Here, during jury voir dire one potential juror informed the court that his father

17 had been a deputy sheriff in Modoc County.  The court asked whether there was anything about

18 his relationship with his father that would make it difficult to make him a fair and impartial juror.

19 The potential juror responded: "Well, it's just that my father told me dozens of times, if you are

20 ever guilty of a crime, your odds of getting out of that crime is declaring a jury trial."  (Answer,

21 Ex. B, <u>People v. Daotien</u>, slip op. at 12-13.) The last reasoned decision on this claim was the

22 decision of the California Court of Appeal for the Third Appellate District on petitioner's direct

23 appeal.[6] In rejecting petitioner's claim, the Appeal Court stated:

24     The conclusion of the trial judge as to wether the entire jury venire has

25 

26     [6]The California Supreme Court denied this claim without comment or citation. (Answer, Ex. C.)

10

1   been contaminated to such an extent that its discharge is required is entitled to
    great deference.  This is because the trial court is in a better position to gauge
2   whether juror comments created bias or prejudice on the part of the venire.
        ....
3           In the present case, defendant has not made a clear showing of abuse of
    discretion on the part of the trial judge.  Only one juror made a derogatory comment about
4   criminal defendants.  Defendant has made no showing the comment affected the jury panel that
    tried the case.
5

6   Ex. B, People v. Daotien, slip op. at 15-16.)  After a careful review of the record, the court cannot

7   find that prejudice has been demonstrated.  Here, there is no showing that the comment had any

8   impact on the jury panel that tried petitioner's case.  Petitioner makes no showing of any

9   prejudice beyond his bare assertion that prejudice occurred.  Further, the nature of the alleged bias

10  in this case is different both in degree and kind from that which the courts have traditionally

11  viewed as involving a high risk of prejudice.  This is not a case that involves "any private

12  communication, contact, or tampering, directly or indirectly, with a juror during a trial about the

13  matter pending before the jury, . . . nor does it involve the influence of the press upon the jury."

14  United States v. Klee, 494 F.2d at 396 (citations omitted).  The court recommends that this claim

15  be rejected.

16  ///

17  ///

18  ///

19  ///

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

IV.    <u>Conclusion</u>

In accordance with the above, IT IS RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within ten days after being served with these findings and recommendations, petitioner may file written objections with the court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Petitioner is advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>See</u> <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED:   September 6, 2006.

**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE