IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

NGUYEN DAOTIEN,

    Petitioner,                            No. CIV S-03-1252 DFL CMK P

    vs.

SISKIYOU COUNTY PROBATION,     AMENDED FINDINGS

    Respondent.                  AND RECOMMENDATIONS

_____/

        Petitioner is a state prisoner proceeding pro se with an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his petition, petitioner challenges his July 2000 conviction on assault with a deadly weapon and by means of force likely to produce great bodily injury and reckless driving and the sentence of three years probation.

I.    Background[1]

        The crimes arose out of an incident in which petitioner drove through a construction barrier on Highway 97 in Siskiyou County, California. Mary Bigham was working as a flagger on a construction paving project on Highway 97 on the afternoon of September 22, 1999. Using cones, she had marked off an area for northbound traffic to stop. She was wearing

---

[1] For a more detailed discussion of the facts see the opinion of the California Court of Appeal for the Third Appellate District in People v. Nguyen Daotien (March 4, 2002), a copy of which is attached as exhibit B to the Answer.

a neon green vest, holding a eighteen by eighteen inch stop sign, and she was wearing a white hard hat.  A number of signs warned motorists on the road construction ahead.

Dan Wells and Cal Perkins were pilot car drivers who led the stopped traffic through the construction area.  Wells and Perkins were also wearing the neon vests and hard hats.  Their cars bore signs stating "Pilot Car" and "Follow Me" and had flashing amber beacons on the top.  At the time of the incident, Wells was preparing to pilot northbound traffic and Perkins was preparing to pilot southbound traffic.

Bigham was standing on the shoulder of the northbound lane, preparing to release her traffic when she saw a cloud of dust kicked up by a red pickup driving up the shoulder of the northbound lane.  There were approximately twelve vehicles waiting to be led through the construction zone in front of Bigham.  Bigham then saw the red pickup truck cut in between two trucks that were about ten vehicles back and cross over into the southbound lane.  She ran into the southbound lane and held up her stop sign.

The pickup truck never stopped or slowed.  Instead, it swerved abruptly at Bigham, who jumped backwards into the southbound lane.  Bigham estimated the truck was traveling between twenty-five and thirty miles per hour.  The pickup came with four to six inches of her body, and she felt its side mirror hit her hand.

After narrowly missing Bigham, the pickup continued towards Wells, who had been standing near the rear of his pilot car.  The pickup never slowed or stopped.  Wells saw the pickup swerve toward Bigham.  The pickup came so close to Bigham that Wells thought it had run over her foot.  Wells estimated the pickup was going thirty to thirty-five miles per hour.  When the pickup swerved towards him, Wells raised his arms, waved them and yelled as loudly as he could for the driver to stop.  Wells jumped out of the way as the pickup came towards him.  Wells's right hand hit the hood of the pickup truck as the pickup drove past him.  As the pickup continued northbound, Wells jumped in his pilot car to go after it.

///

1    The pickup continued driving down the northbound lane. Perkins, the other pilot
2 car driver, saw the pickup coming towards him in the northbound lane. Perkins was piloting
3 traffic in the southbound lane. Perkins tried to block the pickup by placing his vehicle in the
4 roadway. The pickup maneuvered around Perkins's car and continued northbound. The pickup
5 finally stopped on the paved shoulder of the northbound lane when it encountered southbound
6 traffic. Perkins and Wells boxed in the pickup truck.

7    Before Perkins could get out of his pilot car, petitioner began maneuvering the
8 pickup, trying to get around the pilot cars. Perkins walked up to the window of the pickup. He
9 asked petitioner what he was trying to do. Petitioner did not respond. Perkins asked petitioner if
10 he spoke English. When petitioner replied that he did, Perkins advised defendant that he was a
11 member of the safety team and was making a citizens arrest.

12    Perkins instructed petitioner to move his truck and wait for a highway patrolman
13 to come. While waiting, petitioner again attempted to leave; members of the paving crew arrived
14 to help Perkins, boxing in petitioner with their own cars. Nevertheless, petitioner tried to leave
15 twice more.

16    After forty-five minutes, Deputy Sheriff Christopher Rees arrived. Rees twice
17 told petitioner to exit his truck. When petitioner finally exited, he tried to leave. When
18 petitioner did not comply, Rees grabbed him and handcuffed him.

19    Petitioner told Rees that he was trying to make it to Klamath Falls before dark.
20 Petitioner told the highway patrolman who arrived to investigate that he had lived in the United
21 States for twenty years and had driven through construction before. He said that he had seen the
22 traffic stopped on the highway and had stopped his pickup. Petitioner stated that he had seen the
23 flagger holding the stop sign and was not sure why he did not stop. Petitioner denied driving
24 towards the flagger and said that he had tried to drive away from her. He had no explanation for
25 what he did.
26 ///

II.     Standards for Granting Habeas Relief

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States. See 28 U.S.C. § 2254(a). Federal habeas corpus relief also is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

See 28 U.S.C. § 2254(d) (referenced herein in as " § 2254(d)" or "AEDPA). See Ramirez v. Castro, 365 F.3d 755, 773-75 (9th Cir.2004) (Ninth Circuit affirmed lower court's grant of habeas relief under 28 U.S.C. § 2254 after determining that petitioner was in custody in violation of his Eighth Amendment rights and that § 2254(d) does not preclude relief); see also Lockyer v. Andrade, 538 U.S. 63, 70-71 (2003) (Supreme Court found relief precluded under § 2254(d) and therefore did not address the merits of petitioner's Eighth Amendment claim).  Courts are not required to address the merits of a particular claim, but may simply deny a habeas application on the ground that relief is precluded by 28 U.S.C. § 2254(d). See Lockyer, 538 U.S. at 71 (overruling Van Tran v. Lindsey, 212 F.3d 1143, 1154-55 (9th Cir.2000) in which the Ninth Circuit required district courts to review state court decisions for error before determining whether relief is precluded by § 2254(d)).  It is the habeas petitioner's burden to show he is not precluded from obtaining relief by § 2254(d).  See Woodford v. Visciotti, 537 U.S. 19, 25 (2002).

The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) are different. As the Supreme Court has explained:

> A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts. The court may grant relief under the "unreasonable

4

> application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case. The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in <u>Williams v. Taylor</u>, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) that an unreasonable application is different from an incorrect one.

<u>Bell v. Cone</u>, 535 U.S. 685, 694 (2002). A state court does not apply a rule different from the law set forth in Supreme Court cases, or unreasonably apply such law, if the state court simply fails to cite or fails to indicate an awareness of federal law. See <u>Early v. Packer</u>, 537 U.S. 3, 8 (2002).

The court will look to the last reasoned state court decision in determining whether the law applied to a particular claim by the state courts was contrary to the law set forth in the cases of the United States Supreme Court or whether an unreasonable application of such law has occurred. See <u>Avila v. Galaza</u>, 297 F.3d 911, 918 (9th Cir.2002), cert. dismissed, 538 U.S. 919 (2003). Where the state court fails to give any reasoning whatsoever in support of the denial of a claim arising under Constitutional or federal law, the Ninth Circuit has held that this court must perform an independent review of the record to ascertain whether the state court decision was objectively unreasonable. See <u>Himes v. Thompson</u>, 336 F.3d 848, 853 (9th Cir.2003). In other words, the court assumes the state court applied the correct law, and analyzes whether the decision of the state court was based on an objectively unreasonable application of that law. It is appropriate to look to lower federal court decisions to determine what law has been "clearly established" by the Supreme Court and the reasonableness of a particular application of that law. See <u>Duhaime v. Ducharme</u>, 200 F.3d 597, 598 (9th Cir.1999).

III.     <u>Arguments and Analysis</u>

At the onset, the court notes that petitioner has not sought state collateral review of his conviction. (Answer at 3.) Petitioner has exhausted his state remedies through the presentation of certain constitutional claims to the California Supreme Court in his petition for direct review. (Answer, Exs. B and C.)

///

A. <u>Errors in Allowing Testimony (Claims 1, 2, 3 and 5)</u>

Petitioner claims that the trial court erred in allowing officer Cureton to offer his expert opinion and in allowing him to testify that hearsay evidence formed the basis of his expert opinion. Petitioner contends that the trial court erred in allowing Cal Perkins to offer opinion testimony and committed prejudicial error in allowing Mr. Perkins to testify about driving daily past a memorial for a traffic safety operator. Petitioner argues that the trial court erred in allowing Mr. Perkins's testimony about a traffic safety operator's memorial.

In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." <u>Estelle v. McGuire</u>, 502 U.S. 62 (1991) (citing 28 U.S.C. § 2241; <u>Rose v. Hodges</u>, 423 U.S. 19, 21, (1975) (per curiam )). Because federal habeas relief does not lie for state law errors, a state court's evidentiary ruling is grounds for federal habeas relief only if it renders the state proceedings so fundamentally unfair as to violate due process. See <u>Drayden v. White</u>, 232 F.3d 704, 710 (9th Cir. 2000), <u>cert. denied</u>, 532 U.S. 984 (2001); <u>Spivey v. Rocha</u>, 194 F.3d 971, 977-78 (9th Cir. 1999), <u>cert. denied</u>, 531 U.S. 995 (2000); <u>Jammal v. Van de Kamp</u>, 926 F.2d 918, 919 (9th Cir. 1991) ("The issue for us, always, is whether the state proceedings satisfied due process; the presence or absence of a state law violation is largely beside the point").

1. <u>Expert Testimony of Officer Cureton</u>

Petitioner claims that the trial court erred in allowing Officer Cureton to offer his expert opinion that a pickup being driven twenty-five to thirty miles per hour would cause significant bodily injury to Cal Perkins.[2] "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.

///

---

[2] In his direct appeal, petitioner presented other claims of error regarding Officer Cureton's expert testimony; however, in the instant habeas petition he argues only that the trial court erred in allowing Officer Cureton to testify about possible bodily injury to Cal Perkins.

The last reasoned decision on this claim was the decision of the California Court of Appeal for the Third Appellate District on petitioner's direct appeal.³  In rejecting petitioner's claim, the Appeal Court stated:

> We agree that such matters are inappropriate for expert testimony.  However, the error was harmless.  We review the improper admission of evidence pursuant to the standard established by People v. Watson, (1956) 46 Cal.2d 818, 836.  Under this standard, we will not reverse the judgment unless we conclude it is reasonably probable that there would have been a different outcome had the error not occurred.
> That a pickup striking a pedestrian can cause significant bodily injury is universally well known and beyond dispute.  While the jury did not need an expert to testify on this matter, it is not reasonably probably it would have concluded otherwise.
> Likewise, if the jury believed the testimony of the three victims that defendant swerved toward them at a rate of 25 miles an hour or more, missing them by only inches, and that he deliberately drove his pickup at Perkins causing Perkins to jump on the hood to avoid injury, it is reasonably probable the jury would have concluded defendant's driving was reckless.

(Answer, Ex. B, People v. Daotien, slip op. at 8 (internal citations omitted.))   The state court concluded that allowing Officer Cureton to offer his expert opinion was a harmless error. After a careful review of the record, the court finds that allowing the expert testimony did not render the proceedings to fundamentally unfair as to violate due process.  See Drayden, 232 F.3d at 710.  As noted above, it is common knowledge that a pickup striking a person can cause significant injury; other witnesses testified that petitioner drove towards Perkins at speed of twenty-five miles per hour or higher.  Even without Officer Cureton's expert testimony on the issue of bodily injury, the jury could have concluded that petitioner's driving could have caused significant bodily harm and was reckless.

The state court's determination of the facts was entirely reasonable, and that its rejection of this claim was neither contrary to nor an unreasonable application of controlling principles of federal law.  The court recommends that this claim be rejected.

///

---

³The California Supreme Court denied this claim without comment or citation. (Answer, Ex. C.)

7

2.      Hearsay Foundation for Expert Opinion

Petitioner argues that Officer Cureton should not have been allowed to testify about hearsay matters which he used for the basis of his expert opinion. The last reasoned decision on this claim was the decision of the California Court of Appeal for the Third Appellate District on petitioner's direct appeal.[4] In rejecting petitioner's claim, the Appeal Court stated:

> Material otherwise inadmissible, such as a hearsay statement, is properly the basis for an expert's opinion, as long as it is reliable. In this case, the witnesses providing the hearsay statements testified at trial and were subject to the defendant's cross examination. They proved to be reliable witnesses on the witness stand, and their testimony was consistent with each other an with the statements on which Cureton relied. The trial court did not abuse its discretion in determining the statements on which Cureton's opinion was based were reliable.
> ....
> "Because an expert's need to consider extrajurisdictional matters, and a jury's need for information sufficient to evaluate an expert opinion, may conflict with an accused's interest in avoiding substantive use of unreliable hearsay, disputes in this area must generally be left to the trial court's sound judgment. Most often, hearsay problems will be cured by an instruction that matters admitted through an expert go only to the basis of his opinion and should not be considered for their truth.
> ....
> In the instant case, the trial court operated well within its discretion by allowing Cureton to summarize the victims' statements on which he based his opinion. The rationale for limiting testimony directed to the reasons for forming an opinion is to prevent the jury from hearing incompetent hearsay evidence.
> ....
> Defendant had the opportunity to cross examine these witnesses to test their accuracy and credibility. Additionally, the court have a limiting instruction that the evidence could not be considered for its truth.

(Answer, Ex. B, People v. Daotien, slip op. at 8, 11 (internal citations omitted.)) After a careful review of the record, the court cannot find that the admission of the hearsay statements, as a basis for Officer Cureton's expert opinion, violated petitioner's right to due process as defined by clearly established federal law at the time of the state court's decision. See Drayden, 232 F.3d at

---

[4]The California Supreme Court denied this claim without comment or citation. (Answer, Ex. C.)

710.[5]

### 3. Lay Opinion of Cal Perkins

Petitioner argues that the trial court erred in allowing Cal Perkins to offer a lay opinion of whether petitioner was driving recklessly. The last reasoned decision on this claim was the decision of the California Court of Appeal for the Third Appellate District on petitioner's direct appeal.[6] In rejecting petitioner's claim, the Appeal Court stated:

> As a lay witness, Perkins testified that defendant placed him and all of the other people in an unsafe situation. Evidence Code section 800 provides a lay witness may give opinion testimony where it is: "Rationally based on the perception of the witness and helpful to a clear understanding of his testimony."
> ....
> Defendant's interpretation of the facts that he had been driving slowly and safely to the front of traffic merely to find out what the problem was. He claimed the construction workers jumped in front of his vehicle. The implication was that they, not he, acted in an unsafe manner.
> Perkins's testimony was helpful because the mere recitation of facts, i.e. defendant's approximate speed, which way he swerved, and how close he came to the workers, was insufficient to rebut the implication that all of defendant's actions were aimed at avoiding hazards created by the workers. The testimony was helpful for the jury to understand that defendant's actions were not the actions of a cautious driver merely trying to avoid harm to reckless road workers who were unreasonably putting themselves in the path of danger.

(Answer, Ex. B, People v. Daotien, slip op. at 12-13.) The court has reviewed the "newly discovered evidence," which is a mathematical proof, that petitioner submitted in his traverse. In

---

[5]The court notes that Crawford v. Washington, 541 U.S. 36 (2004) is not applicable here. The state court's denial of petitioner's habeas application became final in 2002 and Crawford was decided on March 8, 2004. See LaJoie v. Thompson, 217 F.3d 663, 669 (9th Cir. 2000) (stating that analysis under section 2254(d) is made with reference to the clearly established federal law at the time of the state court's adjudication). Moreover, even if Crawford did apply, the court finds that the admission of the hearsay statements as a basis for an expert opinion does not offend its holding. Officer Cureton's generalized statement's concerning whether a pickup being driven at a speed of twenty-five miles or higher could cause significant bodily injury, (RT 257, 261-264.) is not the kind of testimonial evidence precluded by Crawford. See Crawford, 541 U.S. at 51 (describing a testimonial statement as " '[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact' ").

[6]The California Supreme Court denied this claim without comment or citation. (Answer, Ex. C.)

the proof, petitioner purports to prove that Perkins's testimony was not true. (Partial Traverse filed on May 03, 2004 at 4.) Petitioner's proof is correct; however, the assumptions upon which his proof are based may not be true. It is not this court's job to reconsider the credibility of witnesses. That is a job for the trial court. It is, instead, the job of this court to determine whether the petitioner's trial was so fundamentally unfair so as to violate his due process rights. After a careful review of the record, the court finds that the admission of the lay opinion of Cal Perkins did not render the outcome of petitioner's trial fundamentally unfair, thus violating his due process rights. The court recommends this claim be rejected.

    4. <u>Testimony Concerning Traffic Safety Officer's Memorial</u>

Petitioner argues that the court committed prejudicial error in admitting Cal Perkins's testimony that he daily drove past a traffic safety officer's memorial. Petitioner claims that this testimony was irrelevant and that the statement created undue prejudice against petitioner.

The last reasoned decision on this claim was the decision of the California Court of Appeal for the Third Appellate District on petitioner's direct appeal.[7] The Appeal Court rejected this claim after the following analysis:

> [Perkins stated] "An earlier job that I was on during that summer, I drove daily by a memorial for a traffic safety operator." The defense attorney objected that the answer was irrelevant and inflammatory. The prosecutor responded that she was trying to elicit an explanation of why Perkins behaved as he did in trying to stop defendant's pickup. The trial court overruled the objection.
> ....
> No further mention was made of the safety operator's memorial until the prosecutor's closing argument, when she reminded the jury that Perkins "said he drove past a memorial where somebody had been injured, somebody just like him, somebody had been killed by somebody like this defendant."
> ....
> The evidence was relevant to a determination of the charge of reckless driving. Vehicle Code section 23103 states in pertinent part: "Any person who drives any vehicle upon a highway in willful or wanton disregard for the safety of persons or property is guilty of reckless driving." Perkins's testimony that traffic safety

---

[7]The California Supreme Court denied this claim without comment or citation. (Answer, Ex. C.)

> operators can be and have been killed on the job was probative of the fact that the safety of road construction crews is put in jeopardy by drivers who ignore the construction warnings. Additionally, as discussed, defendant's testimony implied the construction workers, not he, acted in a reckless manner. Perkins's testimony was relevant to show that the actions he took were reasonable under the circumstances.
>
> In any event, the admission of the statement was harmless error, if it was error at all. As explained, we review error in the admission of evidence under the harmless error standard established by People v. Watson. Perkins's statement consisted of a single sentence amidst testimony of over 37 pages. Notwithstanding the prosecutor's remarks in her closing argument, it is not reasonably probable there would have been a different outcome had the statement not been admitted.

(Answer, Ex. B, People v. Daotien, slip op. at 13-14 (internal citations omitted.))

An error will be found to be harmless unless it is shown that the error had a substantial and injurious effect of influence in determining the jury's verdict. Brecht v. Abrahamson, 507 U.S. 619, 623 (1993). Under the standard announced in Brecht, the state court's finding that the error, if any, in allowing testimony concerning the memorial was harmless is not contrary to or an unreasonable application of established federal law. 28 U.S.C. § 2254(d)(1). Accordingly, the court recommends that this claim be rejected.

B.  Motion for Mistrial (claim 4)

Petitioner contends that his constitutional rights were violated when the trial court denied his motion for a mistrial based on jury taint resulting from a potential juror's comments. The Sixth Amendment guarantees a fair trial by an impartial jury. Irvin v. Dowd, 366 U.S. 717, 722 (1961); Tinsley v. Borg, 895 F.2d 520, 523 (9th Cir.1990). If even a single juror is "unduly biased or prejudiced" the defendant has been denied his right to an impartial jury. Id. at 523-24. However, not every incident of juror misconduct or bias requires a new trial. United States v. Klee, 494 F.2d 394, 396 (9th Cir. 1974). "The test is whether or not the misconduct has prejudiced the defendant to the extent that he has not received a fair trial." Id. On collateral review, a petitioner must show that the alleged error "'had substantial and injurious effect or influence in determining the jury's verdict.'" Jeffries v. Blodgett, 5 F.3d 1180, 1190 (9th Cir. 1993) (quoting Brecht, 507 U.S. at 637).

Here, during jury voir dire, one potential juror informed the court that his father had been a deputy sheriff in Modoc County. The court asked whether there was anything about his relationship with his father that would make it difficult to make him a fair and impartial juror. The potential juror responded: "Well, it's just that my father told me dozens of times, if you are ever guilty of a crime, your odds of getting out of that crime is declaring a jury trial." (Answer, Ex. B, People v. Daotien, slip op. at 12-13.) The last reasoned decision on this claim was the decision of the California Court of Appeal for the Third Appellate District on petitioner's direct appeal.[8] In rejecting petitioner's claim, the Appeal Court stated:

> The conclusion of the trial judge as to whether the entire jury venire has been contaminated to such an extent that its discharge is required is entitled to great deference. This is because the trial court is in a better position to gauge whether juror comments created bias or prejudice on the part of the venire.
>
> ....
>
> In the present case, defendant has not made a clear showing of abuse of discretion on the part of the trial judge. Only one juror made a derogatory comment, about criminal defendants. Defendant has made no showing the comments affected the jury panel that tried the case.

(Answer, Ex. B, People v. Daotien, slip op. at 15-16.) After a careful review of the record, the court cannot find that prejudice has been demonstrated. Here, there is no showing that the comment had any impact on the jury panel that tried petitioner's case. Petitioner makes no showing of any prejudice beyond his bare assertion that prejudice occurred. Further, the nature of the alleged bias in this case is different both in degree and kind from that which the courts have traditionally viewed as involving a high risk of prejudice. This is not a case that involves "any private communication, contact, or tampering, directly or indirectly, with a juror during a trial about the matter pending before the jury, . . . nor does it involve the influence of the press upon the jury." United States v. Klee, 494 F.2d at 396 (citations omitted). The court recommends that this claim be rejected.

///

---

[8]The California Supreme Court denied this claim without comment or citation. (Answer, Ex. C.)

C. Jury Instructional Error (claims 6-8.)

Petitioner claims that his right to a fair trial, arising under the Due Process Clause of the Fourteenth Amendment, was compromised by erroneous jury instructions. Federal habeas courts do not grant relief, as might a state appellate court, simply because a jury instruction may have been deficient. The only question for the federal court is whether the allegedly ailing instruction by itself so infected the entire trial that the resulting conviction violates due process. See Donnelly v. DeChristoforo, 416 U.S. 637, 642-43 (1974). A violation of due process occurs if a trial is fundamentally unfair. See Estelle, 502 U.S. at 72-73.

1. Unanimity Instruction

Petitioner argues that the charge contained in Count 3 against him, assault with a deadly weapon on Perkins, could have been based on two different incidents; therefore the trial court erred in failing to give a unanimity instruction, violating petitioner's right to a unanimous jury. The last reasoned decision on this claim was the decision of the California Court of Appeal for the Third Appellate District on petitioner's direct appeal.[9] A jury instruction tailored to the particular charges and requiring unanimity on a specific set of facts is not necessary in every case. See United States v. Ferris, 719 F.2d 1405, 1407 (9th Cir. 1983); Richardson v. United States, 526 U.S. 813, 817 (1999)(jurors need not agree on the specific facts supporting an element of a federal crime as long as the jurors find there is evidence to support all the elements of the crime). Petitioner has not met his burden of showing that the California state courts' rejection of this claim was based on an objectively unreasonable application of federal law. Accordingly, the court recommends that this claim be rejected.

2. CALJIC No. 2.62

At trial, the jurors were instructed as follows:

In this case, the defendant has testified to certain matters. If you find that

---

[9]The California Supreme Court denied this claim without comment or citation. (Answer, Ex. C.)

13

> the defendant failed to explain or deny any evidence against him introduced by the prosecution which he can reasonably be expected to deny or explain because of facts to his knowledge, you may take that failure into consideration as tending to indicate the truth of this evidence and as indicating that among the inferences that may reasonably be drawn
> The failure of a defendant to deny or explain evidence against him does not, by itself, warrant an inference of guilt, nor does it relieve the prosecution of its burden of proving every essential element of the crime and the guilt of the defendant beyond a reasonable doubt.
> If a defendant does not have the knowledge that he would need to deny or to explain evidence against him, it would be unreasonable to draw an inference unfavorable to him because of his failure to deny or explain the evidence.

(Answer, Ex. B, People v. Daotien, slip op. at 18-19 quoting CALJIC No. 2.62.) Petitioner argues that this instruction violated his right to due process because the instruction "suggested that [he] had failed to explain or deny adverse evidence, when this was untrue." The last reasoned decision on this claim was the decision of the California Court of Appeal for the Third Appellate District on petitioner's direct appeal.[10]

Petitioner has not met his burden of showing that the California state courts' rejection of this claim was based on an objectively unreasonable application of federal law. Petitioner fails to point to any federal cases that condemn the above instruction or which support his position that the instruction suggested that he had failed to explain or deny adverse evidence. Indeed, the language of the instruction specifically indicates that the prosecution still bore the burden of proving every essential element of the crime with which petitioner was charged. Accordingly, the court recommends that this claim be rejected.

        3.    CalJIC No. 17.41.1

At trial, the jurors were instructed as follows:

> The integrity of the trial court requires that jurors, at all times during their deliberations, conduct themselves as required by these instructions. Accordingly, should it occur that any juror refuses to deliberate or expresses an intention to disregard the law or to decide the case based on penalty or punishment or any other improper basis, it's the obligation of the other jurors to immediately advise the court of the situation.

---

[10] The California Supreme Court denied this claim without comment or citation. (Answer, Ex. C.)

(Answer, Ex. B, People v. Daotien, slip op. at 20 quoting CALJIC No. 17.41.1.) Petitioner argues that this instruction violates his right to due process because any instruction that "invites reporting to the court can only chill free discussion." The last reasoned decision on this claim was the decision of the California Court of Appeal for the Third Appellate District on petitioner's direct appeal.[11] That decision found that any error in giving this instruction was subject to a harmless error analysis, subject to reversal only upon a showing of prejudice. (Answer, Ex. B at 20.) The Court of Appeal found that petitioner had made no showing of error. (Id.) Petitioner has not met his burden of showing that the California state courts' rejection of this claim was based on an objectively unreasonable application of federal law. He has made no showing of prejudice—indeed he does not allege suffering any prejudice as a result of this instruction in his petition. Accordingly, the court recommends that this claim be rejected.

C.   Cumulative Error (claim 9)

Petitioner's final claim is that the cumulative effect of all of the alleged errors requires reversal of his conviction. For the reasons set forth in these findings and recommendations, none of the claimed errors resulted in a violation of petitioner's constitutional rights. This claim for relief should be denied.

IV.   Conclusion

In accordance with the above, IT IS RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within ten days after being served with these findings and recommendations, petitioner may file written objections with the court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Petitioner is advised that failure to file objections within the

---

[11] The California Supreme Court denied this claim without comment or citation. (Answer, Ex. C.)

specified time may waive the right to appeal the District Court's order. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: January 26, 2007.

                                         **CRAIG M. KELLISON**
                                         UNITED STATES MAGISTRATE JUDGE